IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUDY L. WILSON,                                    CV 04-831-MA

        Plaintiff,                             OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

        Defendant.

RORY LINERUD
P.O. Box 1105
Salem, OR 97308

    (503) 587-8776

      Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024

RICHARD A. MORRIS
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2156

        Attorneys for Defendant

MARSH, Judge.

    Plaintiff filed a civil action for judicial review of a
final decision of the Commissioner denying her application for
supplemental security income benefits on (SSI) pursuant to Title
XVI of the Social Security Act, 42 U.S.C. §§ 405(G), 1383(c)(3).
Plaintiff alleges the Administrative Law Judge (ALJ) erred in
finding she is not entitled to benefits.  Plaintiff seeks an
order reversing the Commissioner's decision and remanding the
case for an award of benefits.  In the alternative, plaintiff
seeks a remand for further proceedings because the ALJ relied on
an improper vocational hypothetical, and an improper record
development.  The Commissioner contends her decision is based on
substantial evidence and is free from legal error and, therefore,
requests the Court to affirm her decision.

    This court has jurisdiction pursuant to 42 U.S.C. § 405(g).
For the following reasons, I affirm the final decision of the
Commissioner and dismisses this case.

### **BACKGROUND**

    Plaintiff applied for SSI on July, 17, 2001.  Her

application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). The ALJ conducted a hearing on October 10, 2003. Plaintiff and plaintiff's landlord/housemate testified on behalf of plaintiff. Vocational Expert (VE) Vernon G. Arne also testified at the hearing.

On December 26, 2003, the ALJ found plaintiff did not have any physical limitations, but has moderate psychological limitations. Based on these limitations, the ALJ found plaintiff is capable of performing her past relevant work and, therefore, is not under a disability.

The ALJ's decision became the final decision of the Commissioner on April 19, 2004, when the Appeals Council denied plaintiff's request for review.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner

bears the burden of developing the record.  <u>DeLorme v. Sullivan</u>,
924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.
1995).

The court must weigh all of the evidence whether it supports
or detracts from the Commissioner's decision.  <u>Martinez v.
Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation."  <u>Andrews</u>,
53 F.3d at 1039-40.

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>.
<u>denied</u>, 121 S. Ct. 628 (2000).  "If additional proceedings can
remedy defects in the original administrative proceeding, a
social security case should be remanded."  <u>Lewin v. Schweiker</u>,
654 F.2d 631, 635 (9th Cir. 1981).

## **DISABILITY ANALYSIS**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability on July 29, 1996. See 20 C.F.R. § 416.920(b).

At Step Two, the ALJ found plaintiff has no physical limitations but has severe psychological impairments. 20 C.F.R. § 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities). The psychological impairments include an anxiety related disorder and a substance addiction disorder that moderately limit plaintiff's ability to follow detailed instructions, to interact appropriately with the public, to work with others as part of a team, to formulate plans and goals independently, and to complete a normal workday or workweek.

At Step Three, the ALJ found plaintiff's impairments did not meet or equal "one of a number of listed impairments that the

[Commissioner] acknowledges are so severe as to preclude substantial gainful activity." 20 C.F.R. § 416.920(d).

At Step Four, the ALJ found plaintiff's limitations did not limit her from performing her past relevant work as a prep cook/dishwasher, maid, bartender, and mushroom picker. 20 C.F.R. § 416.965.

Accordingly, the ALJ found plaintiff is not under a disability and, therefore, the ALJ did not need to reach Step Five of the sequential inquiry. 20 C.F.R. §§ 416.920(a)(4)(iv) and 416.920(f).

### DISCUSSION

Plaintiff is now 40 years old. She completed the 10th grade. She has previously been employed as a prep cook/dishwasher, maid, bartender, and mushroom picker.

Plaintiff claims she is disabled because of physical impairments and psychological impairments. The physical impairments include myofascial abdominal pain, prior cholecystectomy (gall bladder removal), history of reactive airway disease, history of porphyria (resulting in abdominal pain), abdominal and right flank pain, gastroesophageal reflux, chronic abdominal pain, chronic headaches, acute closed head injury, right chest wall pain, irritable bowel syndrome, schatzki ring (abnormal esophegeal tissue causing difficulty in swallowing), chronic pulmonary disease, dysuria (painful

urination), asthma, acute persistent cephalgia (headaches), right-sided paresthesias, history of frequent passing out spells, acute post concussive syndrome, and cervical strain. Plaintiff's alleged psychological impairments include post traumatic stress disorder, bipolar disorder I, dissociative identity disorder, methamphetamine abuse in remission, cannabis abuse in remission, and histrionic personality disorder.

Plaintiff asserts the ALJ (1) improperly determined plaintiff had the residual functional capacity to perform her past relevant work, (2) posed incomplete hypothetical questions to the VE, (3) relied on erroneous VE testimony, and (4) failed to develop the record.

## 1    **Residual Functional Capacity.**

On the issue of her residual functional capacity, Plaintiff alleges the ALJ's findings that plaintiff has no physical limitations and only moderate psychological limitations are not supported by "specific evidence." I disagree.

a.    <u>Physical Limitations</u>.

As noted, plaintiff has the burden of establishing she is unable to engage in substantial gainful activity because of medically determinable physical impairments. Plaintiff alleges a myriad of physical impairments. The ALJ, however, found there was no objective medical evidence of most of plaintiff's physical complaints, including porphyria, kidney pain, chest and arm pain,

low back pain and headaches.  The ALJ found the multiple tests performed on plaintiff support diagnoses of irritable bowel syndrome and mild duodenitis.  The ALJ also noted plaintiff's difficulty in swallowing (Schatzki's ring) should have been alleviated when the ring was dilated from 18 mm to 20 mm.

The ALJ also found plaintiff's allegations of disabling physical impairments are not "wholly credible" because they are inconsistent with the medical record and are not supported by objective evidence.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" (the <u>Cotton</u> test).  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  <u>See</u> <u>also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant has met the standards set out in the <u>Cotton</u> test and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of her symptoms.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir.

1993).  See also Smolen, 80 F.3d at 1283.  If the ALJ fails to give clear and convincing reasons for rejecting the claimant's testimony, the court "will not remand solely to allow the ALJ to make specific findings regarding that testimony" but will credit that testimony as a matter of law.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996)(citation omitted).

Here, the medical records reflect that a number of treating physicians and emergency room doctors expressed concern that plaintiff was engaged in drug-seeking behavior.

For example, Martin J. Scheidt, M.D., treated plaintiff for her various physical complaints from August 2001 until April 2002.  On January 8, 2002, Dr. Scheidt stated in response to an inquiry by a probation officer that he and plaintiff "had never discussed any work limitations, but [Dr. Scheidt] felt it would be reasonable for her to be able to do part-time work with light duty jobs."  On April 1, 2002, however, Dr. Scheidt wrote:

> [W]e have recently received a request for
> records as this patient is attempting to get
> full medical disability for her chronic
> abdominal pain  which we have not been able
> to explain with any major medical diagnosis.
> The patient has been noted by a number of
> providers who have encountered her in the
> emergency room settings to be exhibiting some
> drug seeking behavior and embellishing the
> amount of symptoms she has been having.  Over
> the last several months, I have been inclined
> to give the patient the benefit of the doubt,
> but as our tests have finished up and there
> are no other tests I can think of to evaluate
> her, and the fact that we have not been able
> to find anything seriously wrong, I am

> inclined to think there is some secondary
> gain (the patient is seeking full medical
> disability) going on with this situation.

Tr. 224.

I also note Gaines E. Richardson, M.D., treated plaintiff on three occasions in May and June, 2001. Dr. Richardson reported on May 31, 2001, that he "had a frank discussion with [plaintiff] about [his] concerns of her behavior which seemed to be drug seeking . . . ." Tr. 149.

On February 2, 2002, Charles Spray, M.D., examined plaintiff's medical records on behalf of the Commissioner, and concluded that "I do not see that the [medical records have] established a diagnosis for a condition that presents a barrier to [plaintiff's] inability to perform basic work activity."

Plaintiff did not present any evidence from other medical providers that she suffered from a physical impairment or combination of physical impairments that precluded her from engaging in substantial gainful activity. Indeed, plaintiff relies on Dr. Scheidt's original evaluation in his remark to a probation officer regarding plaintiff's capacity for part-time work to support plaintiff's claim that she is disabled. Plaintiff ignores Dr. Scheidt's later statement that he could find "nothing seriously wrong" with plaintiff.

On this record, I find there is clear and convincing evidence to support the ALJ's finding that plaintiff was not

"wholly credible" in describing her physical limitations, and there is substantial evidence to support the ALJ's finding that plaintiff does not have physical limitations that preclude her from engaging in substantial gainful activity.

b. Psychological Limitations.

On April 8, 2002, psychologist Dorothy Anderson, Ph.D., reviewed plaintiff's medical records and found no medically determinable psychological impairment. Tr. 263-278.

Between September 2002 and May 2003, plaintiff was treated for psychological impairments by Mental Health Nurse Practitioner Carol Bekkinhuis, M.H.N.P. On May 13, 2003, Nurse Bekkinhuis advised plaintiff's attorney that "with proper psychiatric treatment (i.e. counseling and medication and a job that could take into consideration her disabilities) that she could probably work."

The ALJ relied on Nurse Bekkinhuis's report in finding that plaintiff has severe psychological impairments that moderately limit plaintiff's capacity to interact with the public and with co-workers as part of a team, and also limit her capacity to follow detailed instructions and independently formulate plans and goals. Based on that finding, the ALJ found plaintiff was capable of performing her past relevant work.

Plaintiff asserts the ALJ failed to take into account many of plaintiff's complaints to Nurse Beckinhuis, including hearing

voices, depression, mood swings, auditory hallucinations,
inability to focus, and suicidal ideations.  According to
plaintiff, the ALJ should have ordered further testing as to
these specific complaints.

For the same reasons that are applicable to plaintiff's
description of her physical limitations, I find there is clear
and convincing evidence to support the ALJ's finding that
plaintiff's description of her psychological impairments is not
wholly credible.  Therefore, I find there is substantial evidence
in the record to support the ALJ's finding that plaintiff has
severe psychological impairments that do not preclude plaintiff
from engaging in substantial gainful activity.

**2.   Hypothetical Questions to the VE**.

Plaintiff next asserts the ALJ failed to pose complete and
accurate hypothetical questions to the VE regarding potential
jobs plaintiff could perform in light of plaintiff's
psychological limitations.  The ALJ's hypothetical question was
as follows:

> I'd like you to consider a hypothetical
> individual.  She's 38 years old.  She has ten
> years of education and . . . [prior relevant
> work].  She has moderate limitations in
> acting appropriately in public; interacting
> with coworkers as part of a team; following
> detailed instructions; and independently
> formulating plans and goals.  With those
> limitations, could this individual perform
> the work you've identified as past work?

Tr. 638.  (Emphasis added).  The VE responded that such a person could perform her past relevant work except bartending.

Plaintiff asserts her actual limitation is an inability to "interact with the public," which has a different meaning than "acting appropriately in public."  Even if it does have a different meaning, however, plaintiff's counsel immediately followed-up the VE's answer with the following question:

> The limits that we're talking about with
> interacting with the public, and coworkers as
> a team, detailed instructions, if those -
> formulating a goal.  If those were at marked
> levels of limit, would that preclude his
> worker from any employment?

Tr. 638.  (Emphasis added).  The VE responded that such a limitation would preclude employment.

When the record is considered as a whole, I conclude there is no likelihood the VE was confused by the ALJ's question, particularly in light of counsel's clarifying statement, and that the hypothetical as posed was not improper.

Plaintiff next asserts the ALJ failed to define the term "moderate" in the hypothetical question to the VE.  In addition, plaintiff asserts the ALJ's hypothetical specifically should have included a limitation addressing the elements of "pace," "concentration," or "persistence."

The Commissioner asserts the degree of a functional limitation is stated in a range that includes "none," "mild," "moderate," "marked, and "extreme."  Tr. 273.  The Commissioner

13 -  OPINION AND ORDER

also asserts the limitations of pace, concentration, and persistence are functional limitations that, in the context of this case, must be described as the "more specific [functional] limitation" of inability to follow detailed instructions.  <u>See SSR 96-8p - Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations"</u> ("nonexertional capacity must be expressed in terms of work-related functions [such as]. . . the abilities to: understand, carry out, and remember instructions. . .)"

I find the ALJ adequately described the specific functional limitation, <u>i.e.</u>, "following detailed instructions" in the hypothetical question to the VE.  I also find the ALJ sufficiently described the degree of the limitation to the VE. It is clear from the VE's different responses to the questions posed by the ALJ and plaintiff's counsel that he understood the import of the words "moderate" and "marked" as they pertained to the specific functional limitation found by the ALJ.

**3.    <u>VE Testimony</u>.**

Plaintiff asserts the ALJ improperly relied on erroneous testimony by the VE that plaintiff could perform her past relevant work in light of her limited ability to interact with the public and to follow detailed instructions.

The Commissioner concedes the ALJ erred in finding plaintiff could perform her job as a bartender.[1]  The Commissioner, however, asserts the VE did not err in his opinion that plaintiff's limitations do not preclude her from working as a prep cook, maid, or mushroom picker.  Each of those jobs, like almost every job, requires the employee to follow instructions, work with others, and interact with the public, to some degree. The hypothetical posed to the VE, however, pertained to individuals with moderate limitations in those areas.

I agree the record supports the ALJ's finding, based on the VE's opinion, that plaintiff's moderate functional limitations do not preclude her from performing her past relevant work, except bartending.

**4.  Development of the Record.**

Plaintiff asserts the ALJ should have developed the record further by asking the VE appropriate hypothetical questions, by not inquiring of the physicians regarding plaintiff's "many limitations," and by not "seeking additional consultative examinations" that would have clarified medical issues.

As noted, I find the AlJ's hypothetical question to the VE was proper.  In addition, I find that further inquiry into plaintiff's medical condition would not have availed plaintiff

_____

[1] The Commissioner, however, notes correctly that the VE did not opine that plaintiff could perform that job in light of plaintiff's inability to interact with the public.

because her treating physicians were unable to substantiate plaintiff's alleged physical impairments.  Finally, there was substantial evidence to support the ALJ's findings as to the nature and degree of plaintiff's psychological impairments.

## CONCLUSION

For these reasons, the final decision of the Commissioner denying plaintiff's claim for SSI is AFFIRMED.

IT IS SO ORDERED.

DATED this 15 day of April, 2005.


/s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge